UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNICORN GLOBAL, INC. and HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.,

        Plaintiffs,

        *v.*

DGL GROUP, LTD.,

        Defendant.

**ORDER**
21-CV-1443-MKB-SJB

**BULSARA, United States Magistrate Judge:**

    Defendant DGL Group, Ltd. ("DGL") has moved to stay this litigation pending resolution of its petition for *inter partes* review filed on April 7, 2022. The petition challenges all the same claims in the '107 patent being litigated here. (Pet. For Inter Partes Review, attached as Ex. 3 to Mot. to Stay filed Jan. 9, 2023 ("Mot. to Stay"), Dkt. No. 63 at 1; Mem. of Law in Supp. of Mot. to Stay, attached as Ex. 1 to Mot. to Stay, at 1). The Patent Trial and Appeal Board ("PTAB") initiated the *inter partes* review on October 5, 2022. For the reasons explained below, the motion is granted.

    "The *inter partes* review process, like other post-issuance review proceedings, was designed to give the agency an opportunity to correct its mistakes, to give courts the benefit of the agency's consideration of the effect of prior art on patents being asserted in litigation, and to reduce the burden of litigation on the parties and the courts." *In re Intel Corp.*, No. 2021-168, 2021 WL 4427875, at *2 (Fed. Cir. Sept. 27, 2021). "A federal district court has inherent power to stay an action pending *inter partes* review." *Goodman v. Samsung Elecs. Am., Inc.*, No. 17-CV-5539, 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017). "Three factors generally guide a court's discretion in deciding

whether to issue a stay in these circumstances: (1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3) whether a stay will prejudice the nonmoving party." *Id.* (quotations omitted). The burden is on movant to demonstrate the stay is appropriate. *Id.*

As to the first factor, a stay will invariably simplify the issues in this case. Because DGL is challenging all of the claims in the sole patent in the case, a PTAB cancellation would moot this entire case. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); 35 U.S.C. § 315(e)(2). And even if the PTAB cancelled some of the claims in the patent, the scope of this litigation would be narrowed.

Plaintiffs argue that the PTAB only instituted a proceeding on certain claims in the '107 patent, and "left the other claims unaddressed," including the claims in the patent subject to litigation here. (Resp. in Opp'n to Mot. to Stay filed Jan. 9, 2023 ("Resp. in Opp'n"), Dkt. No. 64 at 2).

That is a complete and utter mischaracterization.[1] The PTAB Decision states that it is instituting a "review of all claims as challenged" in the petition. (IPR Grant at 1, 12). And the petition challenges the same claims at issue here: claims 1 and 4–25. (*Id.* at 4–5, 11.) Indeed, Plaintiffs argued before the PTAB that this action was parallel to the

---

[1] Perhaps counsel believes that it was being truthful because each sentence taken separately and shorn of context is, in a tortured reading, technically true. The PTAB did institute a review "on claims 8, 10, 11 and 14-16." (Decision Granting Institution of Inter Partes Review dated Oct. 5, 2022 ("IPR Grant"), attached as Ex. 4 to Mot. to Stay, at 11–12). But the PTAB instituted a review on all the other claims also. (*Id.*) And the PTAB "left the other claims unaddressed," only if you understand "unaddressed" narrowly, *i.e.*, to mean not subject to extended discussion in the order. Placing the two sentences back-to-back makes it seem that the PTAB review is limited. It is not. The PTAB's review is plenary.

matter before the PTAB, and therefore, the PTAB should decline to commence *inter partes* review. (*Id.* at 6 ("Hangzou requests that we exercise our discretion . . . to deny institution based on the parallel infringement action in the U.S. District Court for the Eastern District of New York.")).

Plaintiffs also contend that DGL can only satisfy this first factor if it shows that the PTAB is likely to invalidate every asserted claim. They misapprehend the cases they cite. *Scorpcast, LLC v. Boutique Media*, No. 2:20-CV-0193, 2021 WL 3514751, at *3 (E.D. Tex. June 8, 2021)—the case Plaintiffs cite—itself cites *Arbor Glob. Strategies LLC v. Samsung Elecs. Co.*, No. 2:19-CV-0333, 2021 WL 66531, at *3 (E.D. Tex. Jan. 7, 2021) to say that a party must show "the Board is likely to invalidate every asserted claim." *Arbor* itself cites *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-CV-0390, 2019 WL 3826051, at *2 (E.D. Tex. Aug. 14, 2019). In *Peloton*, the Court denied a stay where the PTAB had initiated a review of only three of the four patents at issue in the federal litigation. *Id.* at *5. And the Court concluded that the PTAB's decision to institute review—even on the claims in the three patents—was not dispositive of whether a stay would result in simplification, because the PTAB was required—following the Supreme Court's decision in *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018)—to conduct a review of all claims in a patent. *Id.* at *2 (suggesting that *SAS* "precluded the PTAB from instituting IPRs for only a portion of the patent claims, so any institution decision occurring after *SAS* provides a weaker inference that the PTAB will determine that all challenged claims are unpatentable. Thus, institution decisions for the '085, '276, and '855 Patents are less helpful in indicating that IPRs will result in a simplification of issues than they would have been before *SAS*.").

3

But once the PTAB has initiated review—as it has done in the present case—*and* indicated that some claims are likely to be invalidated, the Court has some sense of the PTAB's inclination, even if additional claims are being litigated in federal court. Indeed, in *Scorpcast* itself, once the PTAB initiated its review, the Court revisited is earlier decision to deny a stay and concluded that simplification was likely to occur. *Scorpcast*, 2021 WL 3514751, at *3 ("In view of the Board's institution decision, the Court will reconsider this factor. . . . Here, the PTAB instituted on all asserted claims and exhibited a strong inclination toward invalidating the asserted claims.").

So under Plaintiffs' cases, in evaluating the likelihood of simplification, this Court must evaluate the PTAB's decision to initiate review and what it said with respect to the challenges. That analysis is not helpful to Plaintiff. The PTAB concluded that "DGL's Petition demonstrates a reasonable likelihood that at least claims 8, 10, 11, and 14–16 of the '107 patent are unpatentable as obvious." (IPR Grant at 11). So, Plaintiffs' argument boils down to saying that although these six claims are also at issue here, there would be no simplification benefit from a stay, because the PTAB has not addressed the other 17 claims (1, 4–7, 9, 12, 13, 17-25) being litigated here. Even if the PTAB's decision about the six claims did not portend its views about the remaining 17—which it may very well—the argument makes no sense. The *inter partes* review is likely to result in the invalidation of the six claims the PTAB already decided are likely unpatentable; such a decision would eliminate those claims from this litigation. That is simplification enough to justify a stay. *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 19-CV-4297, 2021 WL 195163, at *9 (S.D.N.Y. Jan. 19, 2021) (granting stay in favor of IPR, despite fact that PTAB chose to review only two of five patents), *aff'd*, 15 F.4th 1101 (Fed. Cir. 2021). *Cf. PopSockets LLC v. Quest USA Corp.*, No. 17-CV-3653, 2018 WL 5020172, at *3

4

(E.D.N.Y. Sept. 12, 2018) ("While plaintiffs are correct that these claims will not be before the PTAB, the fact that other claims exist in the Complaint does not preclude a stay."), *report and recommendation adopted*, 2018 WL 4660374, at *2 (Sept. 28, 2018).

The second factor—the stage of the proceedings—also favors a stay. Plaintiffs corral a bevy of cases where claim construction completion resulted in denial of a stay application. (Resp. in Opp'n at 4–5). But, here, claim construction has not been completed—because Plaintiffs objected to the construction offered after the *Markman* hearing. (Obj. to R. & R. dated Aug. 11, 2022, Dkt. No. 57). Importantly, the deadlines for fact and expert discovery have not been set because the claim construction process is not completed. (*See* Report of Rule 26(f) Planning Meeting dated June 14, 2021, Dkt. No. 22 (suggesting date for completion of fact discovery of "90 days after Markman decision")). These are significant parts of the case that are to come, and trial is nowhere on the horizon, unlike many of the cases cited by Plaintiff. This factor favors a stay. *E.g.*, *K.G. Motors, Inc. v. Specialized Bicycle Components, Inc.*, No. 08-CV-6422T, 2009 WL 2179129, at *2 (W.D.N.Y. July 22, 2009) ("[C]ourts 'routinely' issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial.") (collecting cases); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-CV-452, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019) ("While IOENGINE's observations indicate that there has been significant progress in the two cases, the most burdensome stages of the cases— completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future."). "Indeed, it may only serve to waste resources to litigate this matter when an *inter partes* review could render the case moot."

5

*Goodman v. Samsung Elecs. Am., Inc.*, No. 17-CV-5539, 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017).

As to the final factor, prejudice to Plaintiffs, it favors a stay. None of the arguments about prejudice are persuasive. First, Plaintiffs contend that DGL's filing seeking PTAB review was delayed, and occurred only on the last day possible. (Resp. in Opp'n at 6). And they say further delay was a result of DGL waiting two months after the PTAB initiated proceeding to seek a stay. (*Id.* at 6–7). This would perhaps weigh in Plaintiffs' favor if, during the delay, the case had moved significantly towards resolution or through discovery. As noted, it has not.[2] And thus there is no barrier to a stay. *See, e.g.*, *PopSockets LLC*, 2018 WL 5020172, at *4 ("While the IPR proceedings are likely to take some time, especially since the Second IPR Petition was filed just recently, the fact that the PTAB determined that a trial was necessary to resolve the First IPR Petition suggests that whatever is decided will provide guidance to this Court as to the issues raised with respect to the Patent, and inevitably will save both the parties and ultimately this Court in terms of discovery and claims construction proceedings.").

Second, Plaintiffs argue that as a competitor to DGL, they are necessarily prejudiced by any delay in resolving the claims. (Resp. in Opp'n at 8). But that argument proceeds on the mistaken premise the Plaintiffs have the right—due to patent

---

[2] None of the cases cited by Plaintiffs are to the contrary. Although in *Realtime Data LLC v. Actian Coporation*, No. 6:15-CV-463, 2016 WL 3277259, at *3 (E.D. Tex. June 14, 2016) there was a long wait to file the PTAB petition, depositions had occurred, and the court noted that "significant discovery" had occurred. In *Signal IP, Inc. v. Ford Motor Co.*, No. 14-CV-13729, 2015 WL 5719671, at *5 (E.D. Mich. Sept. 30, 2015), there was voluminous discovery including depositions, available from another parallel litigation, and discovery remaining to be done was "lower" "than the typical patent infringement case," as a result. And in *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-CV-63, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010), discovery was complete.

exclusivity—to crowd DGL out of the market. The PTAB has concluded, at least preliminarily, that Plaintiffs lack such a right on certain claims. So the harm that direct competitors would face during the delay from a stay are not as extreme or well-founded as they might be otherwise. *Lederer v. Newmatic Sound Sys., Inc.*, No. 10-CV-0271, 2011 WL 31189, at *3 (E.D.N.Y. Jan. 4, 2011) ("Plaintiff's right to exclude others from practicing his patent is dependent on the patent's validity, and the PTO's granting reexamination calls that validity into question."). Nor have Plaintiffs identified concrete financial harm, by pointing to particular sales data or other similar information, that results from a delayed resolution of the case from a stay. Plaintiffs' conclusory allegation of competitive financial harm stands in stark contrast to their failure to seek preliminary injunctive relief at the case outset and their entering into a relaxed discovery schedule that did not set fixed terminal deadlines for fact or expert discovery, but left them variable to await decisions on claim construction.

      Finally, Plaintiffs contend that they are prejudiced because the PTAB review will be lengthy. (Resp. in Opp'n at 7). This is always true, but the question of prejudice requires something more. *Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*, No. 17-CV-6664, 2018 WL 3814280, at *4 (D.N.J. Aug. 10, 2018) ("The delays inherent in the reexamination process are insufficient to establish undue prejudice.") (collecting cases). It would be a kind of undue delay, prejudicial to Plaintiffs, if discovery were complete, trial were imminent, or if the PTAB had not yet acted on the request for review, or some combination thereof. But none of those are true, and the PTAB has initiated proceedings, which suggests at this point the delay is relatively standard.

7

The motion for a stay is, for the foregoing reasons, granted. The Parties should notify the Court within one week of any decision issued by the PTAB.

SO ORDERED.

/s/ *Sanket J. Bulsara* February 15, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York